UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **BOBBIE VAUGHN** | **CIVIL ACTION NO. 6:19-cv-00293** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **HOBBY LOBBY STORES, INC.** | **MAG. JUDGE CAROL WHITEHURST** |

**RULING**

This is an action sounding in tort for personal injuries and damages brought by the plaintiff, Bobbie Vaughn ("Vaughn" or "Plaintiff"), against the defendant, Hobby Lobby Stores, Inc. ("Hobby Lobby" or "Defendant") under La. R.S. 9:2800.6, Louisiana's Merchant Liability Act. Pending here is a Motion in Limine [Doc. No. 36] filed by Hobby Lobby. Vaughn has filed an opposition [Doc. No. 44]. Hobby Lobby has filed a reply to the opposition [Doc. No. 61].

For the following reasons, Hobby Lobby's motion is GRANTED.

**I.    FACTS AND PROCEDURAL HISTORY**

This lawsuit arises out of an accident that occurred on December 2, 2017, at the Hobby Lobby located in Lafayette, Louisiana. Vaughn contends that as she was shopping in the store, Hobby Lobby employees (including the store manager) were stocking the top shelves of the aisle adjacent to where she was shopping. As the employees were stocking items, they allegedly pushed picture frames located on the top of the shelf, causing several frames to fall onto the other side and strike Vaughn.

Vaughn asserts that she has suffered severe and life altering injuries, as a result of this accident. Specifically, she asserts that she has suffered significant injuries to her neck, including radiating pain into her right arm, and, further, she has suffered from debilitating headaches and

anxiety since this accident.

Significant to the pending motion, Vaughn also asserts she sustained post-traumatic stress disorder ("PTSD") as a result of this incident.

On November 20, 2018, Vaughn filed suit against Hobby Lobby in the Fifteenth Judicial District Court, Parish of Lafayette, State of Louisiana. On March 7, 2019, the lawsuit was removed to this Court [Doc. No. 1].

Hobby Lobby seeks to exclude evidence of any PTSD diagnosis on the basis that the diagnosis is not supported by the medical evidence, and, therefore, is not reliable. The motion is fully briefed, and the Court is prepared to rule.

**II.     Applicable Law and Analysis**

    **A.     Applicable Law**

        **1.     Motions in Limine**

A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds. *Mathis v. Pinnacle Entm't, Inc.,* CIV.A. 11-2199, 2014 WL 2880217, at *5 (W.D. La. June 23, 2014) (quoting *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379 (5th Cir. 1998)).

        **2.     Relevancy Under the Federal Rules of Evidence**

The essential prerequisite of admissibility is relevance. *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (Citing FED. R. EVID. 402). Rule 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

FED. R. EVID. 401. Evidence which is not relevant is not admissible. FED. R. EVID. 402. Implicit in the above definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action. *Hall*, 653 F.2d at 1005. Whether a proposition is of consequence to the determination of the action is a question that is governed by the substantive law. Simply stated, the proposition to be proved must be part of the hypothesis governing the case a matter that is in issue, or probative of a matter that is in issue, in the litigation. *Id*.

Moreover, pursuant to Rule 403 of the Federal Rules of Evidence, the Court may exclude evidence that satisfies the above requirements for relevancy "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED R. EVID. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED R. EVID. 403, 1972 Advisory Committee Note.

    3. **Standard of Review**

Federal Rule of Evidence 702 establishes the standards for admissibility of expert testimony to assist a trier of fact in understanding evidence or determining a fact in issue. In determining whether expert testimony is reliable and relevant, the district court's role in applying Rule 702 is that of a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597-598, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596.

In determining whether to allow expert opinion testimony, the Court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, FED. R. EVID. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Services, Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 591-92).

As to reliability, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

**B. Analysis**

As indicated above, Vaughn alleges that she was injured when Hobby Lobby employees caused several picture frames to fall and strike her. Vaughn denied losing consciousness and

denied having dizziness or confusion immediately after the incident. [Vaughn Depo., Doc. No. 36-2, p. 182]. She also denied having any cuts or bumps to her head after the incident. [*Id*., pp. 172-173]. Her baseball cap remained on her head throughout. [*Id*., p. 167]. Immediately after the incident, she completed an Incident Report in her own handwriting while her mother and sister continued to shop. [*Id*., p. 195]. They completed their purchases, and then Vaughn drove her sister to Youngsville, her mother to New Iberia, and herself home, a round trip of about an hour of driving. [*Id*., pp. 177, 179, 180-181, 193-195].

Vaughn contends that this incident caused her injuries, including, among others, neck pain, shoulder pain, and a mild traumatic brain injury ("TBI"). However, only her allegation that she suffered PTSD is the subject of the pending motion in limine. More specifically, Hobby Lobby objects to any testimony at trial from her second treating psychiatrist, Dr. Joni Orazio ("Dr. Orazio"), that Vaughn has sustained PTSD as a result of this incident.

### 1. Hobby Lobby's Contentions

Hobby Lobby does not dispute Dr. Orazio's qualifications. Instead, Hobby Lobby argues that Dr. Orazio's PTSD diagnosis must be excluded on the basis that it is not reliable, as it is not supported by the medical evidence, but is instead based upon nothing other than Vaughn's own self-serving belief that she has PTSD. Hobby Lobby further contends the diagnosis is not supported by the Diagnostic and Statistical Manual of Mental Disorders ("DSM") criteria for PTSD.

The DSM is published by the American Psychiatric Association and is the "guiding force" used by clinicians and psychiatrists to diagnose psychiatric illnesses. Diagnostic criteria for PTSD was codified in order to "standardiz[e] the classification system with reference to empirically demonstrable phenomenon, thus enhancing the communication and research between mental

health professionals." *State v. Chauvin*, 2002-1188 (La. 5/20/03), 846 So. 2d 697, 706–07, citing *The Psychologist as Expert Witness: Science in the Courtroom?,* 38 Md. L. Rev. 539, 580 n. 207 (1979).

> The DSM-5[1] criteria for PTSD requires the following, in relevant part:
>
>> A. Exposure to actual or threatened death, serious injury, or sexual violence in one (or more) of the following ways:
>>
>>> 1. Directly experiencing the traumatic event(s).
>>>
>>> 2. Witnessing, in person, the event(s) as it occurred to others.
>>>
>>> 3. Learning that the traumatic event(s) occurred to a close family member or close friend. In cases of actual or threatened death of a family member or friend, the event(s) must have been violent or accidental.
>>>
>>> 4. Experiencing repeated or extreme exposure to aversive details of the traumatic event(s) (e.g., first responders collecting human remains; police officers repeatedly exposed to details of child abuse). Note: Criterion A4 does not apply to exposure through electronic media, television, movies, or pictures, unless this exposure is work related.
>>
>> B. Presence of one (or more) of the following intrusion symptoms associated with the traumatic event(s), beginning after the traumatic event(s) occurred:
>>
>>> 1. Recurrent, involuntary, and intrusive distressing memories of the traumatic event(s). Note: In children older than 6 years, repetitive play may occur in which themes or aspects of the traumatic event(s) are expressed.
>>>
>>> 2. Recurrent distressing dreams in which the content and/or effect of the dream are related to the traumatic event(s). Note: In children, there may be frightening dreams without recognizable content.

---

[1] The DSM-5 is the most updated version of the DSM.

> 3. Dissociative reactions (e.g., flashbacks) in which the individual feels or acts as if the traumatic event(s) were recurring. (Such reactions may occur on a continuum, with the most extreme expression being a complete loss of awareness of present surroundings.) Note: In children, trauma-specific reenactment may occur in play.
>
> 4. Intense or prolonged psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event(s).
>
> 5. Marked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic event(s).

The first criterion requires that there be a traumatic stressor, which includes exposure to actual or threatened death, serious injury, or sexual violence. Hobby Lobby asserts that this incident, which involved a 1.6-pound picture frame allegedly hitting Vaughn, was not a life-threatening event and did not cause serious harm. Thus, the first criterion is not satisfied and for this reason alone, the PTSD diagnosis is unsupported.

Dr. Orazio explained that her diagnosis rests on Vaughn's own perception that this incident caused her serious injury. [Dr. Orazio Depo., Doc. No. 36-3, pp. 34-36]. Hobby Lobby asserts that such an approach runs afoul of the obviously objective nature of the DSM-5's criteria, which is meant to guide practitioners in reaching sound diagnoses of PTSD following traumatic events. Additionally, according to Hobby Lobby, neither Vaughn's medical records nor her activities in the immediate aftermath of this incident suggest that she sustained "serious injury" or felt that she was at risk of sustaining serious injury.

Vaughn testified that she suffered no real objective physical injury at the scene, required no medical attention the day of the incident, walked to the manager's office, and completed the Incident Report in her own handwriting while her sister and mother continued to shop. [Vaughn

7

Depo., Doc. No. 36-2, pp. 167, 172-179, 182], Then, Vaughn continued to shop for another ten minutes and drove over an hour to bring her mother and sister home. [Id., p. 177, 179, 180-181, 193-195]. She did not go to an emergency room or urgent care afterwards but followed up a few days later with her primarily care physician, to whom she reported no loss of consciousness. [Id., p. 62; Medical Records from Dr. Langlinais, December 4, 2017 visit Doc. No. 36-4). Thus, the first criteria of the DSM-5 for PTSD is clearly not satisfied, according to Hobby Lobby.

Hobby Lobby contends, further, that the second criteria of the DSM-5 is not met as Vaughn does not have flashbacks of the incident, nor any dreams that she recalls. [Dr. Orazio Depo., Doc. No. 36-3, pp. 38-39].

Since neither the first nor second criteria of the DSM are met, Hobby Loby asserts that any PTSD diagnosis is unfounded.

Hobby Lobby additionally asserts that neither of the other two psychiatrists who have evaluated Vaughn (one who was Vaughn's first treating psychiatrist) believe that she suffers from PTSD. [Medical Records from Dr. Boudreaux, March 2019 and December 2019 visits, Doc. No. 36-5; Dr. Hayes report, Doc. No. 36-6, p. 41; Dr. Orazio Depo, Doc. No. 36-3, p. 34-35; Dr. Hayes Deposition, Doc. NO. 36-7, pp. 99-102, 123, 132-133]. According to medical records from Vaughn's original treating psychiatrist, Dr. Jessica Boudreaux, when Vaughn initially presented to her in March 2019, "[Vaughn] reported that she thinks that she has PTSD. I reviewed the criteria with her and explained why it is my opinion that she does not have the diagnosis of PTSD." [Medical records from Dr. Boudreaux, Doc. No. 36-5].

Over two years after this accident, in February 2020, Dr. Orazio diagnosed Vaughn with PTSD. Hobby Lobby argues that she appears to have done so based only on the history that she obtained from Vaughn and on interviews with Vaughn's husband and boss. [Dr. Orazio Depo.,

Doc. No. 36-3, p. 36]. Dr. Orazio indicated that her only information regarding the incident itself was from Vaughn's report that frames struck her in the back of her head, causing her to be dazed and, possibly, briefly lose consciousness. [*Id*., pp. 21-22]. She admitted, though, that Vaughn's actions in the immediate aftermath of this incident suggest that she was indeed conscious. [*Id*., pp. 23-27].

Also, Vaughn did not report any symptoms of being "dazed and confused" to Dr. Angela Langlinais, her treating primary care physician, when Dr. Langlinais saw her shortly after the alleged incident. In fact, Dr. Langlinais noted "No LOC (Loss of Consciousness)". [Langlinais Medical Record, Doc. No. 36-4]

Dr. Orazio did not have any information regarding the size of the frame in question, including the fact that it weighed only 1.6 pounds. [Doc.No. 36-3., p. 21]. Despite knowing that Vaughn was involved in litigation and the availability of formal testing to determine malingering, Dr. Orazio did not do any such testing.

In summary, Hobby Lobby argues that Dr. Orazio's diagnosis does not follow the DSM-5 criteria and therefore lacks scientific methodology, rendering it unfounded and unreliable. "[A]s the current edition of the DSM is the only commonly accepted diagnostic manual of the mental health professions, an expert's failure to adhere to the DSM-IV's diagnostic criteria would make that expert's methodology highly vulnerable to a *Daubert* challenge." Lloyd B. Chinn, *Psychiatric Expert Witnesses in Sexual Harassment Litigation*, Prac. Law, April 2002, at 11, 20, citing James J. McDonald, Jr. and Francine B. Kulick, eds., *Mental and Emotional Injuries in Employment Litigation* (1st ed. 1994).

9

Therefore, according to Hobby Lobby, this diagnosis of PTSD should be excluded under *Daubert*. The other two psychiatrists, Dr. Jessica Boudreaux and Dr. Patrick Hayes, acknowledge the DSM-5 criteria were not met and therefore did not diagnose Vaughn with PTSD.

Hobby Lobby concludes that Dr. Orazio's PTSD diagnosis should further be excluded because it has the potential to cause prejudice and confuse the jury. Since Dr. Orazio's diagnosis is not supported by the medical evidence, she has done nothing more than parrot Vaughn, which will not assist the trier of fact. Instead, such a diagnosis runs the risk of causing prejudice and confusing the jury as it creates the impression that the subject incident was much more significant than it actually was. For these reasons, Hobby Lobby submits that Dr. Orazio's PTSD diagnosis should be excluded.

### 2. Vaughn's Contentions

Vaughn responds that Hobby Lobby offers no medical opinion to support its position that Dr. Orazio's diagnosis of PTSD does not meet the criteria set forth in the DSM-V. Instead, Hobby Lobby's defense counsel (who are not medical doctors) offer their own lay opinion as to why Dr. Orazio's medical diagnosis of PTSD is incorrect and further speculate as to causation without providing any medical opinion of their own.

Vaughn states that Dr. Orazio is without question qualified to testify as an expert in psychiatry and that Dr. Orazio used sound methodology in diagnosing Vaughn with PTSD. Vaughn submits that, if Hobby Lobby wants to attack Dr. Orazio's credibility and, therefore, her diagnoses, the proper avenue for doing so is at trial. However, Hobby Lobby's mere disagreement with the diagnosis of PTSD based on their lay opinion of what the DSM-V defines as criteria for such a diagnosis does not render Dr. Orazio's medical opinion invalid and subject to exclusion.

Vaughn asserts that, based on her evaluation of the medical records, the screening tools she utilized, and her conversations with Vaughn, Dr. Orazio diagnosed Vaughn with PTSD. Dr. Orazio opined that Vaughn suffered a significant injury, which, according to Dr. Orazio, "is considered severe based on what the patient considers it to be." [Dr. Orazio Depo., Doc. No. 44-1, p. 35]. So while one person "may think that's not much of an injury, [...] for her it was." [*Id*.] Dr. Orazio further explained that as contemplated by the DSM-V, the diagnosis of PTSD is "based on what the patient is experiencing." In this regard, Dr. Orazio noted:

> This patient has experienced pain and suffering that has been significant, and seriously impacted her life and that is what the criteria is capturing. It is not capturing what someone else thinks about it.

*Id*., pp. 35-36.

Vaughn submits that, to this end, Dr. Orazio indicates that Vaughn has suffered a concussion as well as injuries to her neck and shoulder, which resulted in severe anxiety. [*Id*., p. 36]. These are serious issues as contemplated by the DSM-V. [*Id*.]. Moreover, Vaughn has sustained "problems with psychological distress [triggered by] being exposed to the idea or even anything that reminds her of being -- of Hobby Lobby like going in public, whether it's a store or even the thought of it." [*Id*., pp. 39-40]. Further, because of these triggers, Dr. Orazio noted that Vaughn has cognitive disturbances in mood, doesn't participate in things she used to enjoy, has become estranged from her family, and has difficulty with arousal and being irritable and vigilant. [*Id*., p. 40]. Vaughn states these mood disturbances are documented throughout Dr. Orazio's treatment notes as explained in her deposition testimony. [*Id*., pp. 49-53].

Vaughn argues that, based on Dr. Orazio's medical expertise, her decades of experience in treating and diagnosing PTSD, her evaluation of the medical records, and her evaluation of Vaughn, Dr. Orazio determined that Vaughn is suffering from PTSD. Now, without providing any

11

medical evidence, and in spite of the foregoing testimony, Hobby Lobby argues Dr. Orazio's diagnosis is unreliable because it does not believe Vaughn fits the criteria for PTSD.

Vaughn additionally submits that Dr. Orazio is double board-certified in adolescent and adult psychiatry, has been licensed and practicing in Louisiana for 27 years, and has experience in diagnosing and treating PTSD. [Dr. Orazio Depo., Doc. No. 44-1, pp 8-10, 38]. Dr. Orazio has testified in court on multiple occasions and there has been no suggestion that she has ever been excluded from testifying in the past. [*Id.*]. Therefore, according to Vaughn, Dr. Orazio is without question qualified to diagnose the condition of PTSD.

Vaughn further asserts that, in addition to being qualified to render a diagnosis of PTSD, Dr. Orazio relied upon sound methodology (including the diagnostic criteria of the DSM-V) in concluding Vaughn suffers with PTSD. Dr. Orazio explained the diagnostic process of determining whether a serious injury had been suffered, noting the severity of the injury must be viewed from the patient's perspective and corroborated by additional medical evidence. [*Id.*, pp. 35-36]. In this case, Dr. Orazio explained the first qualification was met based on her psychiatric examination of Vaughn and her review of Vaughn's medical records. [*Id.*].

Dr. Orazio continued that the second qualification was met because Vaughn suffers marked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic event. Additionally, Dr. Orazio rejects Hobby Lobby's arguments that because there was no loss of consciousness, no confusion, no dizziness, or visible physical injury to Vaughn immediately after the accident, that Vaughn could not have been severely injured. [Id., pp. 25-27].

Finally, Vaughn submits that none of her treating physicians (including Dr. Orazio) have ascribed any significance to the actual weight of the frame. Vaughn concludes that Hobby Lobby

has failed to show how Dr. Orazio's diagnosis of PTSD is unreliable, and, therefore, the Motion in Limine should be DENIED

### 3. Court's Ruling

The Court finds that the record is lacking sufficient evidence to establish the reliability of Dr. Orazio's opinion that Vaughn suffers from PTSD as a result of this accident. While Dr. Orazio possesses sufficient credentials to render an opinion, the Court is concerned that her opinion is the exact type of "it is so because I say it's so" opinion that the Fifth Circuit has confirmed is inadmissible as nothing more than "credentials and subjective opinions," *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.").

Dr. Orazio places far more emphasis on Vaughn's self-serving belief that she has PTSD than she does on the objective criteria of the DSM, in formulating her opinion. However, neither Vaughn's medical records nor her activities in the immediate aftermath of this incident suggest that she sustained "serious injury" or felt that she was at risk of sustaining serious injury, the first DSM criterion. Vaughn testified that she suffered no real objective physical injury at the scene; required no medical attention the day of the incident; walked to the manager's office and completed the Incident Report in her own handwriting while her sister and mother continued to shop; then continued to shop for another ten minutes; and drove over an hour to bring her mother and sister home. She did not go to an emergency room or urgent care afterwards.

Rather than base her opinion that Vaughn suffers from PTSD on objective criteria, Dr. Orazio ignores these facts and instead relies on what Vaughn says she is experiencing.

Further, although Vaughn asserts that the entire basis for Hobby Lobby's argument is the lay opinion of defense counsel rather than the medical evidence, she does not address the medical

evidence offered by Hobby Lobby, such as the medical records of Vaughn's original treating psychiatrist, Dr. Jessica Boudreaux, as well as those of Dr. Patrick Hayes.

Dr. Boudreaux's medical records provided the following:

> [Plaintiff] explained to me that she is very detail oriented. She asked specific questions about her diagnosis, and we addressed this. She reported that she thinks that she has PTSD. I reviewed the criteria with her and explained why it is my opinion that she does not have the diagnosis of PTSD. She seemed to be aggravated with my response.

[Dr. Boudreaux Medical Records, Doc. No. 36-5, p. 8].

Hobby Lobby also cited medical records from Dr. Patrick Hayes indicating, "[Plaintiff] does not fulfill the DSM-5 criteria for PTSD (past or present)." [Dr. Hayes Report, Doc. No. 36-6, p. 41]. Furthermore, Hobby Lobby specifically cited to the deposition transcript of Dr. Hayes, in which he elaborated upon his reasoning that Vaughn does not meet the DSM-5 criteria.

> Q: And I'm curious as to what your reasoning was specifically and also under the DSM-V, whether you believe that Ms. Vaughan's case would meet the definitional diagnosis of PTSD?
>
> A: Yes, sir. So, I mean, she doesn't fulfill the behavioral criteria, as we discussed earlier with Mr. Moroux. She doesn't have an A1 criteria exposure to establish the flight or fight response such that it could be crystalized. She's not having nightmares of the frame hit. She's not having nightmares of a blow from behind. She's not having intrusive thinking about that. She's not having flashbacks about that. She's having anxiety and -- as generalized anxiety to retail situations, but that's not really the spirit of the re-experiencing phenomenon on PTSD. So she fails two of the cardinals. The A, B, C, D are really the ones that -- and E are the ones that you have to have symptom based. She doesn't fulfill those.

[Dr. Hayes Depo., Doc. No. 36-7, pp. 99-102, 123, 132-133].

Dr. Hayes explained that there were objective behavioral criteria that Vaughn was not experiencing. He indicated that Vaughn lacked any objective symptoms necessary to fulfill the requirements of the DSM-5. Dr. Orazio's diagnosis of PTSD, on the other hand, incorrectly applied

the criteria of the DSM-5 by ignoring its objective components. Dr. Orazio's approach runs afoul of the obviously objective nature of the DSM-5's criteria, which is meant to guide practitioners in reaching sound diagnoses of PTSD following traumatic events.

As indicated above, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

The Court concludes that Vaughn has not satisfied her burden to show that Dr. Orazio's opinion is the product of reliable principles and methods, or that Dr. Orazio has applied the principles and methods reliably to the facts of the case. Dr. Orazio's diagnosis does not follow the DSM-5 criteria and therefore lacks scientific methodology, rendering it unfounded and unreliable. Without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.

The Court further concludes that Dr. Orazio's PTSD diagnosis should be excluded because it has the potential to cause prejudice and confuse the jury.

Accordingly, Hobby Lobby's Motion in Limine [Doc. No. 36] is GRANTED, and any testimony at trial from Dr. Joni Orazio that Vaughn has sustained PTSD as a result of this incident is EXCLUDED.

MONROE, LOUISIANA, this 19th day of May, 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE