UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **BOBBIE VAUGHN** | **CIVIL ACTION NO. 6:19-cv-00293** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **HOBBY LOBBY STORES, INC.** | **MAG. JUDGE CAROL WHITEHURST** |

**RULING**

This is an action sounding in tort for personal injuries and damages brought by the plaintiff, Bobbie Vaughn ("Vaughn" or "Plaintiff"), against the defendant, Hobby Lobby Stores, Inc. ("Hobby Lobby" or "Defendant") under La. R.S. 9:2800.6, Louisiana's Merchant Liability Act. Pending here is a Motion in Limine [Doc. No. 37] filed by Hobby Lobby. Vaughn has filed an opposition [Doc. No. 45]. Hobby Lobby has filed a reply to the opposition [Doc. No. 59].

For the following reasons, Hobby Lobby's motion is GRANTED.

**I.      FACTS AND PROCEDURAL HISTORY**

This lawsuit arises out of an accident that occurred on December 2, 2017, at the Hobby Lobby located in Lafayette, Louisiana. Vaughn contends that as she was shopping in the store, Hobby Lobby employees (including the store manager) were stocking the top shelves of the aisle adjacent to where she was shopping. As the employees were stocking items, they allegedly pushed picture frames located on the top of the shelf, causing several frames to fall onto the other side and strike Vaughn.

On November 20, 2018, Vaughn filed suit against Hobby Lobby in the Fifteenth Judicial District Court, Parish of Lafayette, State of Louisiana. On March 7, 2019, the lawsuit was removed to this Court [Doc. No. 1].

Vaughn asserts that she has suffered severe and life altering injuries as a result of this accident. Specifically, she asserts that she has suffered significant injuries to her neck, including radiating pain into her right arm, and, further, she has suffered from debilitating headaches and anxiety since this accident.

Significant to the pending motion, Vaughn also asserts she will require $1,679,363.64 (pre-discounted amount) for future medical care as a result of this accident, as calculated by Dr. Shelly Savant ("Dr. Savant"), Vaughn's designated expert in life care planning/vocational rehabilitation.

Hobby Lobby seeks to exclude Dr. Savant's reports and opinions. The motion is fully briefed, and the Court is prepared to rule.

## II.    Applicable Law and Analysis

### A.    Applicable Law

#### 1.    Motions in Limine

A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds. *Mathis v. Pinnacle Entm't, Inc.,* CIV.A. 11-2199, 2014 WL 2880217, at *5 (W.D. La. June 23, 2014) (quoting *Bocalbos v. Nat'l W. Life Ins. Co*., 162 F.3d 379 (5th Cir. 1998)).

#### 2.    Relevancy Under the Federal Rules of Evidence

The essential prerequisite of admissibility is relevance. *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (Citing FED. R. EVID. 402). Rule 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence. FED. R. EVID. 401. Evidence which is not relevant is not admissible. FED. R. EVID. 402. Implicit in the above definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action. *Hall*, 653 F.2d at 1005. Whether a proposition is of consequence to the determination of the action is a question that is governed by the substantive law. Simply stated, the proposition to be proved must be part of the hypothesis governing the case a matter that is in issue, or probative of a matter that is in issue, in the litigation. *Id*.

Moreover, pursuant to Rule 403 of the Federal Rules of Evidence, the Court may exclude evidence that satisfies the above requirements for relevancy "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED R. EVID. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED R. EVID. 403, 1972 Advisory Committee Note.

### 3. Standard of Review

Federal Rule of Evidence 702 establishes the standards for admissibility of expert testimony to assist a trier of fact in understanding evidence or determining a fact in issue. In determining whether expert testimony is reliable and relevant, the district court's role in applying Rule 702 is that of a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597-598, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation

of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596).

In determining whether to allow expert opinion testimony, the Court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, FED. R. EVID. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Services, Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 591-92).

As to reliability, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

### B. Analysis

Dr. Savant was designated by Vaughn as an expert in life care planning/vocational rehabilitation. Vaughn was thirty-eight years old at the time of this accident. Vaughn's life expectancy, according to Dr. Savant, is eighty-two years. As indicated above, Hobby Lobby seeks to exclude the reports and opinion of Dr. Savant, including her opinion that Vaughn will require $1,679,363.64 for future medical care as a result of this accident.

#### 1. Hobby Lobby's Contentions

Hobby Lobby does not attack Dr. Savant's qualifications. Rather, Hobby Lobby submits that Dr. Savant's reports and opinions must be excluded or limited as they lack a reliable foundation, are not based on sufficient facts or data, and are so speculative that they are the type of testimony *Daubert* and the Federal Rules of Evidence are specifically designed to filter out. More specifically, Hobby Lobby contends that Dr. Savant's future care recommendations are not supported by medical evidence from Vaughn's treating physicians. Additionally, Hobby Lobby argues that Dr. Savant's testimony is excludable under Rule 403 because it is cumulative, misleading to the jury, and confuses the issues.

Hobby Lobby asserts that, while she is a board-certified neurologist and psychiatrist, Dr. Savant admits that she is not Vaughn's treating physician and that she is not diagnosing or treating Vaughn. Despite this disclaimer and having seen Vaughn only once, Dr. Savant originally prepared a Life Care Plan (the "Plan") dated May 4, 2020, that included several items of future medical care supported solely by Dr. Savant. She based the remainder of her opinions on conversations that she allegedly had with some of Vaughn's treating physicians. Hobby Lobby contends these opinions are not supported by the medical records and evidence in this matter.

Hobby Lobby further asserts that Dr. Savant's November 3, 2020 deposition testimony confirmed that she had essentially placed herself in the role of treating physician, while maintaining that she is not one, stating it would be a "conflict" for her to play dual roles. [Dr. Savant Depo., Doc. No. 37-4, pp. 39-45.] Hobby Lobby states that, in an apparent attempt to remedy this situation, she then consulted with Vaughn's treating orthopedist, Dr. Baronne, in October 2020, and issued a revised Life Care Plan (the "revised Plan") dated December 29, 2020 [Doc. No. 37-13]. The original Plan was reportedly adjusted in accordance with Dr. Savant's conversation with Dr. Baronne, an additional conversation with Mr. Jimmy Reaux (Vaughn's counselor), and changes in Vaughn's medication since the issuance of Dr. Savant's original report. It is Dr. Savant's revised Plan which states that Vaughn will require $1,679,363.64 worth of future medical care.

Hobby Lobby points to two Louisiana federal district court opinions involving Dr. Savant's expert testimony. Hobby Lobby states that Judge Susan Morgan of the Eastern District of Louisiana has cautioned that, as a life care planner, Dr. Savant may only testify as to a plaintiff's future healthcare needs if it is "predicated upon the testimony of treating physicians as to the reasonable need for such care, and the cost of such care." *Snider v. N.H. Ins. Co.,* No. CV 14-2132, 2016 WL 3193473, at *2 (E.D. La. June 9, 2016) (excluding testimony of Dr. Shelly N. Savant if she cannot point to testimony or a report of a treating physician demonstrating a need for the items listed in the plaintiff's life care plan). The Court stated that Dr. Savant "must specifically identify the treating physician upon whose report or testimony she relies prior to testifying as to the need for and future costs of that care." *Id*. (emphasis added). The Court indicated that, without written reports, medical records or deposition testimony supporting her opinions, Dr. Savant's report and opinions should be excluded. *Id*.

Hobby Lobby states that Judge Africk of the Eastern District of Louisiana has criticized Dr. Savant's lack of specificity of sources for similar recommendations made in a previous case. *See Lawrence v. Great Lakes Dredge & Dock Co., L.L.C. of Louisiana*, No. CV 17-9775, 2019 WL 9045085, at *1 (E.D. La. Apr. 24, 2019) ("any projected needs and costs must be based on evidence 'demonstrating the treatment that [Lawrence] will probably need, not simply the treatment that he might need.'"). Judge Africk was especially concerned with the fact that Dr. Savant had Plaintiff's treating physicians "endorse" her recommendations, after Dr. Savant issued her report containing those recommendations. Judge Africk stated

> Dr. Savant's broad and conclusory assertions that Lawrence's treating physicians "endorsed" the entirety of her report, without more (absent a few minor exceptions) will not suffice to make Savant's testimony admissible at trial. Savant cannot go from point A to point B without explaining with some specificity how she arrived at point B.

[Doc. No. 37-6].

Hobby Lobby asserts that Dr. Savant's opinions here are equally baseless because she fails to cite any written report, medical record, or deposition testimony that Vaughn will more probably than not need the treatment that she recommends. For instance, Dr. Savant's original Plan independently recommended three spine intervention procedures (which she estimates will cost $24,837) [Doc. No. 37-3]. Dr. Savant cited her analysis of the medical records of Dr. Franklin and Dr. Sledge in support of these recommendations. [*Id.*] She admitted that she did not speak with either physician in preparing her original report [Dr. Savant Depo., Doc. No. 37-4, pp. 25-26].

According to Dr. Sledge's medical records, however, he only discussed the possibility of cervical facet injections and shoulder injections but noted that Vaughn was unsure if she wanted to proceed at that time and stated that she wanted to see how her symptoms would progress first [Doc. No. 37-7]. Since that record dated August 2019, Vaughn had not returned for further

7

treatment as of the time Dr. Savant prepared the original Life Care Plan in April 2020. Yet, Dr, Savant included those injections in the original Plan and testified that it was her own recommendation and within the purview of a neurologist [Doc. No. 37-4, pp. 9-12]. Hobby Lobby argues that, again, she chose to wear one hat as a purported treating neurologist when Vaughn already has a treating neurologist (Dr. Weir), and then she took her own advice before wearing the other hat as the Life Care Planner to include future injections in her itemized life care plan.

Hobby Lobby additionally asserts that Dr. Savant's plan recommended spine surgeon follow-up visits annually for five years as well as x-rays of her shoulder and cervical spine, which Dr. Savant testified were based off Dr. Sledge's records. Yet, Dr. Sledge's last record, dated 08/05/19 only mentioned that she could follow-up as needed.

Dr. Savant also recommended 24 sessions of physical therapy every four years (at a total cost of $72,003), based on records from Dr. Franklin and Dr. Sledge; the only mention of therapy is from Dr. Franklin noting that he would extend her current physical therapy on 02/22/18.

Dr. Savant recommended MRIs of the cervical spine and right shoulder, and physiatrist visits based off Dr. Franklin's records; again, there is no indication in his records that these are future recommendations and it appears that Vaughn has not followed up with Dr. Franklin since 02/22/18.

Hobby Lobby states that, after issuing her original May 2020 report, in October 2020, Dr. Savant had Dr. Baronne, Vaughn's new treating orthopedist, retroactively approve the foregoing recommendations. This further demonstrates the unreliability of her opinions that she first reached on her own, and then later attempted to support through Vaughn's new orthopedist, according to Hobby Lobby. Her updated report does not cite to any specific medical records from Dr. Baronne to support that more probably than not, Vaughn will require any individual item of future care that

she recommends. Rather, she merely lists Dr. Baronne's name in addition to her own as a "source" for each line item that she had already independently recommended. As per Judge Africk, "the endorsements say nothing about the factual predicate underlying Savant's conclusions and recommendations." [Doc. No. 37-6].

Hobby Lobby further asserts that Dr. Savant's Plan, which projects medical expenses over a 43-year period can only be described as wildly speculative. For instance, only months after the Life Care Plan, was originally prepared, Vaughn's treating physicians already changed her medications, necessitating a drastic reduction in the amount of medication that Dr. Savant believes that Vaughn will need in the future. Hobby Lobby states that, given that Dr. Savant already had to significantly revise her Life Care Plan months after it was prepared demonstrates exactly how unreliable and speculative Dr. Savant's predictions are regarding Vaughn's medical care for the next 43 years.

Hobby Lobby additionally asserts that Dr. Savant's Life Care Plan is so over-inflated it exceeds the bounds of reason. According to Vaughn's own recapitulation of medical expenses, the treatment undergone in the last three years since this accident occurred totals $32,627, which is on average, $10,875 per year since the accident. And yet, prior to any discount to present value, Dr. Savant's total Life Care Plans call for treatment totaling $39,054-$41,851 each year. Hobby Lobby argues that the Life Care Plan is so over-inflated compared to the medical treatment undergone to date, is so wildly speculative and lacking in foundation, that it is nothing more than the very type of "junk science" that *Daubert* is meant to exclude.

Finally, Hobby Lobby argues that Dr. Savant's testimony is excludable under Rule 403 because it is cumulative, misleading to the jury, and confuses the issues. Hobby Lobby states that this Court should exclude Dr. Savant as an expert because her recommendations address the same

injuries and treatment plan as Drs. Weir, Orazio and Baronne. Since those doctors are Vaughn's treating physicians, their testimony should be given deference. Any other experts addressing the same or similar issues would be cumulative, create an unreasonable risk of misleading the jury and could confuse the issues because they supplant and/or contradict the course of treatment described by Vaughn's treating physicians.

### 2. Vaughn's Contentions

Vaughn responds that Dr. Savant relied upon the practices and principles applicable to life care planners in creating her Plan, and further relied on Vaughn's treating physicians' input in generating the Plan, which Vaughn intends to present at trial. Vaughn asserts, therefore, that any arguments Hobby Lobby raises goes directly to Dr. Savant's credibility and must be heard by the jury. Vaughn further states that the Plan has been updated to reflect her treating physicians' recommendations.

Vaughn submits that, while doctors are familiar with the future treatment a plaintiff may require, they are not familiar with the costs of that treatment. It is for this reason that a life care planner is helpful to the jury, as life care planners project the future costs of treatment determined to be medically necessary by the plaintiff's treating physician so that the jury may award an appropriate amount of damages.

Vaughn contends that Dr. Savant's life care plan was generated in a reliable manner. Dr. Savant not only reviewed Vaughn's medical records and other supporting documents, she consulted with Vaughn's treating physicians regarding her injuries and necessary treatment and performed an independent medical examination of Vaughn which included a full neurological exam. Dr. Savant then took the information she obtained from Vaughn's treating physicians and that which is contained in the medical records and drafted a life care plan with recommendations

based on the same. These recommendations were thereafter confirmed by Dr. Savant with Vaughn's treating physicians who were actively providing treatment during the generation of the life care plan or were made based on the medical records generated by Vaughn's treating physicians.

With regard to the two Louisiana federal district court opinions cited by Hobby Lobby, Vaughn asserts that in each of these cases, the Court deferred excluding any of the opinions or recommendations of Dr. Savant, advising that each recommendation made should be supported by medical records or the testimony of a treating physician at trial. Therefore, at trial, should Hobby Lobby encounter an objectional recommendation after the presentation of evidence by Vaughn's treating physician, Vaughn contends that an objection can be made at that point. Any such objections are now premature.

Vaughn additionally argues that Dr. Savant's Plan is reliable as it has been consistently updated. Further, with regard to Hobby Lobby's contention that the Plan is overinflated, Vaughn asserts that this argument is nothing more than a credibility argument Hobby Lobby can make to the jury at trial

Finally, with regard to Hobby Lobby's argument that Dr. Savant's testimony is cumulative because Vaughn's treating physicians will testify at trial, Vaughn responds that Dr. Savant's testimony and opinions are far more likely to help the jury in determining what future care is or is not necessary and is meant to be supported by the testimony of Vaughn's treating physicians. Dr. Savant's opinions and recommendations are therefore not cumulative, and, in fact, are helpful to the finder of fact, according to Vaughn.

### 3. Hobby Lobby's Reply

Hobby Lobby replies that Vaughn's argument that the Court should wait until the trial to see if Vaughn has presented sufficient evidence for the basis of Dr. Savant's opinions is meritless. Hobby Lobby contends that Vaughn's argument ignores the expert disclosure requirements set out in Rule 26, which mandates that her expert report include the opinions and the "basis and reasons" for such opinions. Hobby Lobby asserts that Dr. Savant has not pointed to any medical records or medical testimony to support many of the opinions in her report.

Hobby Lobby argues that it is of no consequence whether Vaughn thinks that she will be able to submit sufficient evidence to establish the basis of Dr. Savant's opinions at trial. Hobby Lobby concludes that any such disclosure of the basis for Dr. Savant's opinions for the first time at the trial is untimely pursuant to this Court's scheduling order and Rule 26.

### 4. Court's Ruling

The Court finds that Vaughn has failed to carry her burden of showing that Dr. Savant's testimony is based upon sufficient facts or data; or that Dr. Savant's testimony is the product of reliable principles and methods; or, that Dr. Savant has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702.

Regardless of an expert's qualifications, "expert testimony that relies on 'completely unsubstantiated factual assertions' is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 n.4 (5th Cir. 2007)). Indeed, when the proposed expert testimony "is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position,' the trial court should exclude it." *Id.* (quoting *Guillory v. Domtar Indus. Inc.,* 95 F.3d 1320, 1331 (5th Cir. 1996)).

Here, Dr. Savant fails to cite with sufficient specificity any written report, medical record, or deposition testimony that Vaughn will more probably than not need the treatment that Dr. Savant recommends. In other words, Vaughn has failed to show that Dr. Savant's proposed testimony is predicated upon the testimony of treating physicians (other than herself), as to the reasonable need for such care, and the cost of such care.  Her own diagnoses of any disorder or condition or the future medical costs related thereto is not sufficient.

This failure makes it impossible for the Court to make a determination, pre-trial, that Dr. Savant's testimony is the product of reliable principles and methods, or that Dr. Savant has applied the principles and methods reliably to the facts of the case.

As to Vaughn's request that the Court wait until trial to determine whether she has submitted sufficient evidence to establish the basis of Dr. Savant's opinion, the time for that inquiry has passed.  Vaughn had ample opportunity to provide the portions of the reports, depositions, or other documentation upon which Dr. Savant relies to opposing counsel and to the Court but failed to do so. Any such disclosure of the basis for Dr. Savant's opinions for the first time at trial is untimely pursuant to this Court's scheduling order and Rule 26.

Further, the fact that Dr. Savant already had to significantly revise her Life Care Plan months after it was prepared demonstrates how unreliable her predictions are regarding Vaughn's medical care for the next 43 years.  Additionally, Dr. Savant's Plan appears to be speculative and significantly over-inflated.  For example, as indicated above, although Vaughn's medical expenses in the last three years averaged $10, 875 per year, Dr. Savant opines that Vaughn's future medical expenses will total approximately $40,000 per year.

In short, Vaughn has failed to carry her burden of establishing the reliability of Dr. Savant's reports and opinion.

### III. CONCLUSION

For these reasons, Hobby Lobby's Motion in Limine [Doc. No. 37] to exclude the testimony and opinions of Dr. Shelly Savant is GRANTED.

MONROE, LOUISIANA, this 25th day of May, 2021.

                                        **TERRY A. DOUGHTY**
                                        **UNITED STATES DISTRICT JUDGE**